## IVERN CORPORATION
### vs.
## HAROLD A. CARPENTER

Superior Court          Fairfield County          File #48486

Present: Hon. FRANK P. McEVOY, Judge.

Chambers & Hesselmeyer,      Attorneys for the Plaintiff.

Tammany & Connery,           Attorneys for the Defendant.

MEMORANDUM FILED JANUARY 13, 1936.

McEVOY, J.    In the first reason of demurrer it is alleged that "as between the plaintiff and defendant, it is immaterial whether the defendant had a gasoline permit or not". This allegation must be considered in connection with the whole purpose of this ground of demurrer.

If construed separately from the other grounds of demurrer it would necessarily be over-ruled as will appear in the subsequent part of this memorandum.

The second reason of demurrer raises the question which is determinative of this demurrer.

Are these permits issued for the protection of private persons or only in the interest of the State?

To state the question in a broader and more fundamental sense—

Why does the State require that a permit be obtained for the installation and maintenance of a gasoline station?

In 1919 by **Public Acts, Chapter 166, Section 6,** it was provided, substantially, that no person shall sell any gasoline without having applied for and secured from the Commissioner of Motor Vehicles a license to sell such gasoline and, further, that each person applying for a license shall state the location of each place where he intends to sell.

In Section 7 of that Chapter a substantial fine or imprisonment for a violation of the Section was provided.

Thereafter, in 1921, by virtue of a Public Act, Chapter 334, Section 5, it was provided, substantially, that no station or place of business for the sale of gasoline be established or maintained unless a certificate be procured from the Commissioner of Motor Vehicles stating that, in the opinion of the Commissioner, the location "will be such as not to imperil the safety of the public".

It should be noted that Chapter 334 is made up of twenty-five operative sections, that it is entitled "An Act Concerning the Use of Vehicles upon Public Highways"; that its main purpose seems to have been the regulation of the use of vehicles, their type and operation upon public highways and bridges.

The 1919 and 1921 enactments appear to be designed to

permit and require regulation by the State of the Sale of gasoline and the places where it may be sold within the State of Connecticut.

The pertinent legislative provisions respecting the sale, location, license, tax and expenditure of gasoline tax receipts are now to be found summarized in **Chapter 84, Page 273 et seq. Cumulative Supplement to the General Statutes, 1935.**

In **Section 674C (top of page 275, Chapter 84, 1935)** the finding of suitability (of the location) is made to depend, amongst other findings, "that such use of such proposed location will not imperil the safety of the public."

These last words are practically repetitious of the basic provisions of the original act adopted fourteen years earlier in **Section 5, Chapter 331, Public Acts 1921.**

In **Section 658C, 1935 Supplement, at Page 278** it is provided that all money received from gasoline taxes shall be expended upon State highways.

A careful reading and comparison of all of the legislation respecting the sale of gasoline and the location of gasoline stations, since the original enactment of 1919, would indicate that the obvious intention of the legislature was to regulate the sale of gasoline and the location of the places of sale with a view to the safety of the public.

Substantial payments of taxes have been provided as well as substantial fines, as well as a substantial term of imprisonment for failure to comply with the regulatory statute.

In this action the plaintiff does not ask for an injunction to restrain the maintenance and operation of the present gasoline station, apparently, because on September 14, 1934, the present plaintiff joined as party plaintiff in action Number 45,728, **Young vs. Carpenter,** then pending in this Court and in which, on April 10, 1935, judgment was duly entered that a permanent injunction issue against the present defendant but in that case.

In this action the plaintiff claims only damages and the real basis for the claim for damages is found in paragraph seven of the complaint where it alleges that "solely because of the illegal operation of said station by the defendant . . . . the

plaintiff suffered substantial damage in that the sums received for use of his property will be greatly diminished".

Passing over the generality of this claim and the lack of any allegation of fact as to the sums actually received for the use of the plaintiff's property, it is apparent that the foundation of the plaintiff's claim for damage is not the operation of the station by the defendant but rather the illegal operation of the station.

"Selling gasoline is not a business or privilege to be exercised only by virtue of a public grant, but it is a common right to be exercised independently by any competent person conformably to reasonable regulations, such as pertain to public health and safety, and others of a similar nature, equally applicable to all who choose to engage therein." **New State Ice Company vs. Liedman; 285 U. S. 262, 273; Perdue vs. Zoning Board of Appeals, 118 Conn. 174 at Page 179.**

"The statutory duty must be owing to the person injured, and not to someone else, in order that a violation thereof shall constitute actionable negligence." **Longstean vs. McCaffrey's Sons, 95 Conn. 486, 494.**

"To maintain this proposition it is necessary to make it appear that the duty imposed was a duty to individuals rather than a duty to the whole public of the city; if it was only a public duty it can not be pretended that a private action can be maintained for a breach thereof.

"A breach of public duty must be punished in some form of public prosecution, and not by way of individual recovery of damages." **Taylor vs. Lake Shore & Michigan S. Ry. 45 Mich. 74 at 77.**

This case is to be distinguished from actions for injunction to restrain interference with the use by the plaintiff of navigable waters which use or interference affects the plaintiff.

In such cases it has been held that the private plaintiff may have the interference enjoined. **1 Root (Conn.) 362 at 364; 20 Conn. 117, Page 120.**

A private cause of action may also grow out of pollution of a stream when the plaintiff has a right to the unpolluted use of the stream.

Nolan vs. New Britain, 69 Conn. 668 at Page 678, 679, where it was said that:

"Anything not warranted by law, which annoys and disturbs one in the use of his property, rendering its ordinary use or occupation physically uncomfortable to him, is a nuisance . . . .

"If the annoyance is such as to naturally interfere with the ordinary comfort of human existence, it is a nuisance."

Even though a business is not a nuisance per se, it is within the police power of the State to declare that "in particular circumstances and in particular localities" a business which is not a nuisance per se, "shall be deemed . . . . in fact and in law a nuisance". State vs. Hillman, 110 Conn. 106.

Under the facts in that case the reasoning intended by the decision seems to have been that the nuisance existed as to the State—as no injury to any private person was in issue.

Likewise the erection of a structure, though it is not in itself a nuisance (may) become such when it is located in a place forbidden by law. Fitzgerald vs. Merard Holding Company, 106 Conn. 475 at Page 484.

"Nuisance is a word often very loosely used; it has been not inaptly described as 'a catch-all' of ill-defined rights."

In its proper use, however, it involves as an essential element that it is the natural tendency of the act or thing complained of to create damage and inflict injury upon person or property. Gonchar vs. Kelson, et al 114 Conn. 262 at Page 271.

In the instant case there is no allegation of personal inconvenience or danger.

The damage alleged arises out of alleged injury to the business of the plaintiff.

A right of action at law arises from the existence of a primary right in the plaintiff and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. Pavelka vs. St. Albert Society, 82 Conn. 146.

"It is not enough for a plaintiff to prove a violation of a Statute concurrent with his injury, but he must go further and show that a condition to which the Statute direcly relates has a causal connection with his injury." **Berdos vs. Tremont and Suffolk Mills, 209 Mass. 492.**

"It is a well settled rule that a person may not recover from another for negligence based upon the violation of a Statute . . . . which is not intended for his protection . . . . The statutory duty must be owing to the person injured, and not to someone else." **Anthony vs. Connecticut Company, 88 Conn. 700 at 707.**

"The violation of a Statute which forbids the doing of certain acts does not give a cause of actionable negligence in favor of private individuals, unless the statute was designed to prevent such injuries as were suffered by the individual claiming damages, and unless it imposes upon the one violating the Statute a specific duty for the protection or benefit of him who claims damages for the violation." **Longstean vs. McCaffrey's Sons, 95 Conn. 486 at 493.**

The right of the individual to allege a claim for damages based upon the violation of a statute depends upon a construction of the Statute which would indicate that the legislature intended to protect the rights of the individual as distinguished from the general public.

If the Statute were designed to protect children against their employment then "the right of civil action in addition (to a heavy penalty) may well have been regarded as a more efficacious way of compelling observance of the law." **Berdos vs. Tremont and Suffolk Mills, 209 Mass. 492, at Page 493.**

This would be so especially where the title and wording of the Act show that it was an Act for "the better preservation of life and property". **Parker vs. Barnard, 135 Mass. 116 at Page 120.**

On the other hand, even though the Statute does tend to provide for the protection of life this feature alone does not necessarily give rise to a private right of action. **Grant vs. The Slater Mill Company, 14 R.I. 380.**

The third reason of demurrer alleges, substantially, that the plaintiff may not maintain this action because it is not

alleged that the plaintiff complained to the Motor Vehicle Department or requested the Motor Vehicle Department to prevent the further claimed illegal operation by the defendant.

If one suffers an injury especial and peculiar to his property from an obstruction in a Town Common upon which his property fronts, he is entitled to maintain an action for an injunction against the continuance of the encroachment—without application, in the first instance, to the proper authorities.

Otherwise he would not have adequate remedy at law. **Fitzgerald vs. Merard Holding Company, 106 Conn. 475 at 482.**

On such application it must appear that the plaintiff suffered special damages.

"Special damage is that which the law does not necessarily imply that the plaintiff has suffered from the act complained of." **Id Page 480.**

"Plaintiff's right of action is not dependent upon his having requested the public authorities in charge to enforce the violation and their refusal or failure to perform their duty." **Id. Page 482; Atwood vs. Partree, 56 Conn. 80; Wheeler vs. Bedford, 54 Conn. 244.**

Even though the public officials, upon request, refuse to take any action in the premises and the plaintiff does take such action, yet the plaintiff could not recover the expenditures as the action would have been "brought in (plaintiff's) own right and the expenditures incurred in prosecuting it for his own benefit". **Fitzgerald vs. Greenwich, 115 Conn. 699 at 700.**

It is true that:

"A demurrer addressed to the substance of a complaint must fail if any fact provable under its allegations would support the cause of action relied upon." **Blakeslee vs. Water Commissioners, 106 Conn. 642 at 649; Folwell vs. Howell, et al, 117 Conn. 565 at 568.**

The plaintiff has expressly alleged that its claimed right arises "solely because of the illegal operation of said station . . . ." **Paragraph 7 of the complaint.**

No other cause or right of action is alleged.

For all of these reasons the plaintiff's Reasons one and two of the demurrer are sustained.

Reason three of the demurrer is over-ruled.