JASON ROBERT'S, INC. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
(AC 31256)

Gruendel, Lavine and Robinson, Js.

Submitted on briefs December 7, 2010—officially released April 12, 2011

*Stuart Hawkins* and *Daniel Shepro* filed a brief for the appellant (plaintiff).

*Richard Blumenthal,* former attorney general, and *Philip M. Schulz* and *Richard T. Sponzo,* assistant attorneys general, filed a brief for the appellee (named defendant).

*Opinion*

ROBINSON, J. The plaintiff, Jason Robert's, Inc., appeals from the judgment of the trial court affirming

the decision of the employment security board of review (board), which found that the plaintiff was liable for unemployment compensation contributions with regard to the claimant, Michael Derose.[1] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff is a concrete business. During the years 1998, 1999 and 2000, the plaintiff employed Derose as a concrete artisan. While Derose was working for the plaintiff as an employee, he asked for a raise in salary. In order to give Derose the potential to earn more money, the plaintiff directed Derose to set up a business so that he could enter into an agreement with the plaintiff as a licensed dealer. In or about 2001, after Derose had set up his own business, the plaintiff presented him with a licensed dealer authorization (agreement), and, on May 4, 2001, Derose signed the agreement and became a licensed dealer for the plaintiff.

The agreement provided the following: the plaintiff would do all of the scheduling when a job was sold on its contract; Derose had to contact the plaintiff on a daily basis for a status report on each job; Derose had to purchase the plaintiff's uniforms and wear the uniform each day; the plaintiff retained the right to cancel the agreement if Derose engaged in certain conduct, which included, inter alia, use of drugs, use of alcohol during the workday, intoxication on the job, continued absence or tardiness, failure to meet installation goals and insubordination; Derose had to notify the plaintiff one hour prior to his normal arrival time if he was to be absent on that day; Derose had to lease a truck from the plaintiff and was required to maintain the truck, which

---

[1] The claimant, Derose, was a nonappearing defendant at trial and is not involved in this appeal. We refer in this opinion to the administrator of the Unemployment Compensation Act as the defendant.

included waxing the exterior of the vehicle and cleaning the interior of the vehicle; and Derose could not compete, directly or indirectly, with the plaintiff for the term of the agreement and for a period of two years thereafter.

Derose was a licensed dealer of the plaintiff during the years 2001 and 2002. During those years, the plaintiff classified Derose as an independent contractor. At the end of 2002, Derose terminated the agreement because the arrangement had become unprofitable for him. After terminating the agreement, Derose filed a claim for benefits under the Unemployment Compensation Act (act), General Statutes § 31-222 et seq. This claim for benefits caused the defendant, the administrator of the act, to issue a missing wage assignment. Pursuant to the missing wage assignment, Robert E. Stern, a field auditor of the employment security division of the state department of labor, requested that the plaintiff make available its books and records for an audit. On April 25, 2003, after Stern had conducted his audit, he issued his written report, wherein he concluded that Derose was an employee during the years 2001 and 2002. In a letter dated April 29, 2003, the defendant informed the plaintiff of this determination and that there would be an assessment for the contributions due in the amount of $4366.03 plus interest. On May 16, 2003, the plaintiff appealed this determination to the appeals division, and, on April 17, 2007, a hearing was held before an appeals referee. On September 12, 2007, after having made extensive findings of fact, the appeals referee affirmed the determination. In its decision, the appeals referee applied § 31-222 (a) (1) (B) (ii),[2] more commonly

[2] General Statutes § 31-222 (a) (1) (B) provides in relevant part: "Any service performed prior to January 1, 1978, which was employment as defined in this subsection prior to such date and, subject to the other provisions of this subsection, service performed after December 31, 1977, including service in interstate commerce, by any of the following: (i) Any officer of a corporation; (ii) any individual who, under either common law rules applicable in determining the employer-employee relationship or under

known as the "ABC test," to its extensive factual findings and concluded that Derose was an employee of the plaintiff. The referee reached this conclusion after having determined that the plaintiff failed to satisfy any of the three prongs of the ABC test.

On September 20, 2007, the plaintiff appealed the decision of the appeals referee to the board pursuant to General Statutes § 31-249.[3] On appeal, the plaintiff claimed that the appeals referee had failed to consider the issue of whether a franchise agreement existed between it and Derose pursuant to General Statutes § 42-133e (b). Additionally, the plaintiff claimed that, as a matter of law, a finding that a franchise agreement existed would have removed the relationship between it and Derose from the operation of the act. On November 2, 2007, the board modified and adopted the appeals referee's findings of fact, affirmed the decision and dismissed the plaintiff's appeal. In its decision, the board declined to make a finding as to whether a franchise agreement existed between the plaintiff and Derose. The board concluded that, even if a franchise agreement did exist, the ABC test governed the question of whether Derose was an employee as defined by the act. Having

the provisions of this subsection, has the status of an employee. Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ."

[3] General Statutes § 31-249 provides in relevant part: "At any time before the referee's decision has become final within the periods of limitation prescribed in section 31-248, any party including the administrator, may appeal therefrom to the board. . . ."

determined this, the board then concluded that the plaintiff had failed to satisfy any of the prongs of the ABC test. Thereafter, the plaintiff, pursuant to General Statutes § 31-249b,[4] appealed the board's decision to the Superior Court. The court affirmed the board's decision and rendered judgment dismissing the plaintiff's appeal on June 17, 2009. This appeal followed.

On appeal, the plaintiff claims that the court should have determined that the board's decision resulted from the application of the incorrect legal standard to the facts found. Specifically, the plaintiff claims that the board should have applied § 42-133e (b),[5] rather than the ABC test, to the facts found.[6] We disagree.

Our standard of review of appeals of this nature is well settled. "To the extent that an [appeal] . . . concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review.

[4] General Statutes § 31-249b provides in relevant part: "At any time before the board's decision has become final, any party, including the administrator, may appeal such decision, including any claim that the decision violates statutory or constitutional provisions, to the superior court for the judicial district of Hartford or for the judicial district wherein the appellant resides. . . ."

[5] General Statutes § 42-133e (b) provides: " 'Franchise' means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, provided nothing contained herein shall be deemed to create a franchisor-franchisee relationship between the grantor and grantee of a lease, license or concession to sell goods or services upon or appurtenant to the premises of the grantor, which premises are occupied by the grantor primarily for its own independent merchandising activities; and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate, and includes any agreement between a manufacturer, refiner or producer and a distributor, wholesaler or jobber, between a manufacturer, refiner or producer and a retailer, or between a distributor, wholesaler or jobber and a retailer . . . ."

[6] The plaintiff does not challenge the court's determination that the plaintiff failed to prove all three prongs of the ABC test.

The court must not retry facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator*, 238 Conn. 273, 276, 679 A.2d 347 (1996).

We conclude that the board applied the correct legal standard to the facts found. The sole question before the appeals referee and the board was whether Derose was an employee of the plaintiff for unemployment compensation purposes. To answer this question, the referee and the board applied well settled unemployment compensation law. "An individual may receive unemployment compensation benefits if he or she was an employee within the meaning of the act. In addition to defining the employer-employee relationship pursuant to the common law, § 31-222 (a) (1) (B) provides that individuals who perform services for others are presumed to be employees, unless the recipient of the services (enterprise) satisfies . . . the ABC test. In order for an enterprise to demonstrate that an individual was not an employee, and that the enterprise therefore has no liability for unemployment taxes under the act, the enterprise must prove that the individual satisfies each of the three prongs of the ABC test. This test is conjunctive; failure to satisfy any one of the prongs will render the enterprise subject to the act. . . . Under the ABC test, an individual will *not* be considered an

employee if: [A] such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; *and* [B] such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; *and* [C] such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 277–78. Having applied this law to the extensive facts found, the board properly determined that the plaintiff failed to satisfy all of the prongs of the ABC test and, consequently, that Derose was an employee.

The plaintiff contends, however, that had the board applied § 42-133e (b) to the facts found, it would have determined that a franchise agreement existed and, furthermore, that the ABC test would have been inapplicable. Specifically, the plaintiff argues that a finding that a franchise agreement exists between the parties exempts the relationship from the purview of the act. The plaintiff neither cites, nor does our research reveal, any legal support for this argument. On the basis of our review of the act, we find nothing that elucidates the question of whether the existence of a franchise agreement precludes application of the ABC test. The act makes no express exemption for franchises, nor can we imply an exemption, particularly when, as is the case here, the legislature has created numerous exemptions from coverage under the act.[7] "[I]f the legislature had intended to create [an] exception . . . we

_____

[7] For example, the act exempts the following individuals from coverage: certain commissioned workers; General Statutes §§ 31-222 (a) (5) (K) and (N); students; General Statutes § 31-222 (a) (5) (G); work study individuals; General Statutes § 31-222 (a) (5) (J); relatives; General Statutes § 31-222 (a) (5) (A); and independent contractors; General Statutes § 31-222 (a) (1) (B).

must assume that it would have said so expressly. [I]t is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 320–21, 984 A.2d 676 (2009). While we appreciate that franchises are business arrangements that can differ in many ways from a traditional employment relationship, "[w]e must construe and apply the statute as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." (Internal quotation marks omitted.) *State ex rel. Heimov* v. *Thomson*, 131 Conn. 8, 12, 37 A.2d 689 (1944). Accordingly, we conclude that the court properly affirmed the board's decision.

The judgment is affirmed.

In this opinion the other judges concurred.